**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FIRST AMERICAN BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **INTEGRATEDMARKETING.COM d/b/a RONI HICKS & ASSOCIATES, JANE C. WHEELER, and DIANE LORI GAYNOR-MCCUE,** | ) ) ) ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff First American Bank ("First American"), by and through its undersigned counsel, complains against Defendants IntegratedMarketing.Com d/b/a Roni Hicks & Associates ("Roni Hicks"), Jane C. Wheeler ("Wheeler"), and Diane Lori Gaynor-McCue ("Gaynor-McCue") as follows:

## INTRODUCTION

1. This is a breach of contract action to collect $6,965,627.26 from Roni Hicks that remains due, owing, and outstanding as of May 15, 2019 under a Term Note and Loan Agreement between First American and Roni Hicks in addition to all fees and costs incurred in the pursuit of the enforcement of the terms of the Term Note and Loan Agreement, including reasonable attorneys' fees.

2. This is also a breach of contract action to collect on guarantees provided by Wheeler and Gaynor-McCue in favor of First American, with respect to the Term Note and Loan Agreement with Roni Hicks, who has defaulted on its obligations to First American. First American brings this action to collect $1,500,000 guaranteed by Wheeler; and $500,000 guaranteed by Gaynor-

McCue in addition to all fees and costs incurred in the pursuit of the enforcement of the terms of the Term Note, Loan Agreement, and Guaranty Agreements, including reasonable attorneys' fees.

## THE PARTIES, JURISDICTION AND VENUE

3. First American Bank is an Illinois banking corporation with its principal place of business in Elk Grove Village, Illinois, and citizen of Illinois.

4. IntegratedMarketing.Com d/b/a Roni Hicks & Associates is a California corporation with its principal place of business in San Diego, California, and citizen of California.

5. Defendant Jane C. Wheeler is a resident and citizen of California.

6. Defendant Diane Lori Gaynor-McCue is a resident and citizen of Arizona.

7. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exclusive of interest and costs exceeds $75,000 and this is an action between citizens of different States.

8. Venue is proper in this District because the parties agreed, in the relevant agreements between the parties described below, to submit their disputes before any federal court within the state of Illinois. Additionally, Plaintiff is an Illinois banking corporation with its principal place of business in Elk Grove Village, Illinois, which is located in this District. Elk Grove Village, Illinois is also where the contracts at issue were drafted.

## FACTUAL ALLEGATIONS

### The Parties' Original Agreements

9. In 2017, Wheeler and Gaynor-McCue desired to sell their interest in Roni Hicks to the remaining employees of Roni Hicks pursuant to the existing Employee Stock Ownership Plan ("ESOP"), where the Roni Hicks & Associates Employee Stock Ownership Trust would acquire all remaining shares that it did not otherwise own (the "2017 ESOP Transaction"). To fund the 2017 ESOP Transaction, on June 30, 2017, the parties entered into five agreements.

10. *First*, on June 30, 2017, Roni Hicks executed a Term Note for $7,500,000 (the "Note"). (Ex. A, Note.)

11. In the Note, Roni Hicks agreed that: "In the event the holder of this Note shall refer this Note to an attorney for collection upon the occurrence of an Event of Default, [Roni Hicks] agrees to pay, in addition to unpaid principal and interest, all of the costs and expenses incurred in attempting or effecting collection, including reasonable attorneys' fees." (*Id.*)

12. *Second*, on June 30, 2017, Roni Hicks executed a Revolving Note for $350,000 (the "Revolving Note" and together with the Note, the "Notes"). (Ex. B, Revolving Note.)

13. *Third*, on June 30, 2017, Roni Hicks and First American executed a Loan and Security Agreement (the "Loan Agreement"). (Ex. C, Loan Agreement.)

14. Pursuant to Section 4.1 of the Loan Agreement, the Note's original maturity date was July 1, 2022. (*Id.*) And, in Section 4.1, Roni Hicks agreed to make monthly principal payments of $89,285.21 plus accrued and unpaid interest commencing on August 1, 2017 and on the first day of each calendar month thereafter. (*Id.*)

15. Pursuant to Section 8.1 of the Loan Agreement, in order to secure the timely and full performance of the payments under the Loan Agreement and Note, and any and all interest accruing thereon, Roni Hicks granted First American Bank a security interest in the following property (collectively, the "Collateral"):

    (A) All present and future accounts, accounts receivable, other receivables and claims for money due, instruments, documents, chattel paper, contract rights, and general intangibles (the "Accounts Receivable");

3

(B) All raw materials, supplies, work-in-process, finished goods, and all other inventory whatsoever kind or nature, wherever located, whether now owned or hereafter acquired (the "Inventory");

(C) All machinery, equipment, vehicles, furniture, tools, and trade fixtures and all substitutions and replacements thereof wherever located, and all attachments, accessions, parts, and additions thereto, whether now owned or hereafter acquired;

(D) All of the Borrower's deposit accounts (whether checking, savings, or otherwise) with [Plaintiff] or any other depository institution, whether now or hereafter existing and including accounts held jointly with others;

(E) All monies, securities, drafts, notes, and other property of [Roni Hicks] and the proceeds there of, now or hereafter held or received by or on behalf of [First American] from or for [Roni Hicks], whether for custody, pledge, transmission or otherwise;

(F) All letters of credit, letter of credit rights, and general intangibles, whether now owned or hereafter acquired;

(G) All investment property whether now owned or hereafter acquired;

(H) The Pledged Securities;

(I) All books and records evidencing or relating to any of the foregoing; and

(J) Any and all proceeds and products of the foregoing.

(*Id.*)

16. In addition to granting a security interest in the Accounts Receivable, in Section 8.3, Roni Hicks expressly authorized First American "upon the occurrence of an Event of Default, and during the continuance thereof, to (a) notify any or all account debtors that the Accounts Receivable have been assigned to [First American and that First American] has a security

interest therein and (b) direct such account debtors to make all payments due from them to [Roni Hicks] upon the Accounts Receivable directly to [First American] or to a lockbox designated by [First American]." (*Id.*)

17. In addition to expressly authorizing First American to collect the Accounts Receivable, in Section 8.3, Roni Hicks agreed that: "Upon the occurrence of an Event of Default and during the continuance thereof, and upon the request of [First American], all collections and proceeds of the Accounts Receivable and other Collateral shall be held in trust for [First American], in an account of [Roni Hicks] at [First American]." (*Id.*)

18. Section 10.1(A) of the Loan Agreement describes an Event of Default as Roni Hicks' failure "to pay, within ten (10) days after the date on which payment thereof is due, the principal (or any part(s) thereof) of any of the Notes, or [Roni Hicks'] fail[ure] to pay, within ten (10) days after the date on which payment thereof is due, any installment of interest on any of the Notes or any other sum due and payable under th[e Loan Agreement], or any of the Notes." (*Id.*)

19. Section 10.1(B) of the Loan Agreement describes another Event of Default as Roni Hicks' failure "to keep or perform any agreement, undertaking, obligation, covenant or condition set forth in th[e Loan Agreement] or any of the Loan Documents or any other agreement between [Roni Hicks and First American] within thirty (30) days after the earlier of (i) the date such performance is due or (ii) receiving written notice from [First American] of such performance failure." (*Id.*)

20. Pursuant to Section 10.2(A), upon the occurrence of an Event of Default, First American had the right to "declare the Notes to be, and the Notes shall thereupon become, immediately due and payable." (*Id.*)

21. Pursuant to Section 10.2(C), upon the occurrence of an event of Default, First American may "exercise all rights and remedies of a secured party under the Uniform Commercial Code and otherwise permitted by applicable law, including, without limitation, the right to foreclose the security interest granted herein by any available judicial or other procedure and/or to take possession of any or all of the Collateral and the books and records relating thereto with or without judicial process . . . ." (*Id.*)

22. ***Fourth***, on June 30, 2017, Wheeler and Gaynor-McCue executed a guaranty agreement personally guaranteeing payment of the debt evidenced by the Note and all reasonable expenses, including reasonable attorneys' fees and legal expenses (the "Guaranty Agreement"). (Ex. D, Guaranty Agreement.)

23. In Paragraph 6 of the Guaranty Agreement, Wheeler and Gaynor-McCue waived "(b) notice of the existence or creation or non-payment of all or any of the Obligations, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever." (*Id.*)

24. In Paragraph 11 of the Guaranty Agreement, Wheeler and Gaynor-McCue agreed to pay "all reasonable expenses of collecting and enforcing the Obligations and th[e] Guaranty." (*Id.*)

25. In Exhibit A to the Guaranty Agreement, Wheeler's personal guarantee was set at $1,500,000. (*Id.*)

26. In Exhibit A to the Guaranty Agreement, Gaynor-McCue's personal guarantee was set at $500,000. (*Id.*)

27. ***Fifth***, on June 30, 2017, Roni Hicks and First American executed a Collateral Assignment of ESOP Loan Documents (the "Collateral Assignment"). (Ex. E, Collateral Assignment.)

28. In Paragraph 2 of the Collateral Assignment, Roni Hicks assigned and transferred to First American "a security interest in all of Roni Hicks' right, title and interest in and to the ESOP Loan Documents, together with all of the rights, benefits, remedies, privileges and claims of [Roni Hicks] . . . with respect to each of the ESOP Loan Documents and the collateral included therein or pledged thereunder, including without limitation, the right to receive payments due under the ESOP Note, and the right to realize upon the Pledged Stock." (*Id.*)

29. The Trustee of the Roni Hicks & Associates Employee Stock Ownership Trust consented to the Collateral Assignment. (*Id.*)

30. All of the relevant agreements entered into by the parties will collectively be referred to as the "Loan Documents," and all the obligations therein shall be collectively referred to as the "Obligations."

31. In the Loan Documents, the parties agreed that Illinois law governs the Loan Documents and the enforcement of the same.

32. In the Note, Revolving Note, Loan Agreement, and Guaranty Agreement, the parties agreed that "any . . . federal court located within the state of Illinois" shall have jurisdiction over any disputes between the parties.

**The Parties' Amended Agreements**

33. In 2018, the parties agreed to amend certain terms of the Loan Documents above in connection with First American's re-advance of $500,000 on the Note, but the Loan Documents otherwise remained in full force and effect.

34. On May 21, 2018, First American and Roni Hicks amended the Loan and Security Agreement (the "Amended Loan Agreement"). (Ex. F, Amended Loan Agreement.)

35. In the Amended Loan Agreement, Section 4.1 was amended to extend the maturity date of the Note to June 1, 2023. (*Id.*)

7

36. Additionally, Section 4.1 was amended to reduce Roni Hicks' monthly principal payments to $41,700, plus accrued interest, a month commencing on June 1, 2018 and on the first day of each month thereafter through May 1, 2020. The amendment to Section 4.1 also increased the monthly principal payments commencing on June 1, 2020 to $65,467.90, plus accrued interest, a month through June 1, 2023. (*Id.*)

37. Additionally, the amendment to Section 9.14 altered Roni Hicks' debt service coverage ratio. In the amended Section 9.14, Roni Hicks agreed to maintain a debt service coverage ratio of not less than 1.00 to 1.00 for the fiscal year ending December 31, 2018. (*Id.*)

38. On May 21, 2018, First American and Wheeler and Gaynor-McCue entered into the First Amendment to Guaranty (the "Amended Guaranty") reaffirming their personal guarantees of the Loan Agreement. (Ex. G, Amended Guaranty.)

**Defendants' Breach of the Agreements and the Forbearance Agreement**

39. In late 2018, a dispute arose amongst the Defendants regarding the valuation of Roni Hicks set for the 2017 ESOP Transaction. As a result, on March 14, 2019, the parties entered into a Forbearance Agreement. (Ex. H, Forbearance Agreement.)

40. Since the Revolving Note matured on January 31, 2019, the balance on the Revolving Note was zero as of March 14, 2019, and the parties agreed that it would not be renewed. (*Id.*)

41. In Paragraph 1 of the Forbearance Agreement, Defendants acknowledged that they were in default of the Loan Documents, that the breaches had not been cured, and that First American had the "right to immediately enforce payment by [Defendants] of all of the Obligations and, in connection therewith, to immediately enforce all other remedies provided to [First American] under the Loan Documents." (*Id.*)

8

42. In the Forbearance Agreement, Defendants also agreed that as of December 31, 2018, Roni Hicks had defaulted on the Note and Loan Agreement by failing to maintain a debt service coverage ratio not less than 1.00 to 1.00. (*Id.*) As of December 31, 2018, Roni Hicks had a debt service coverage ratio of 0.57 to 1.00. (*Id.*)

43. Defendants agreed that as of March 5, 2019, the outstanding balance on the Note was $6,868,718.32, plus accrued interest of $4,983.41. (*Id.*)

44. In Paragraph 3(a) of the Forbearance Agreement, Roni Hicks agreed to continue to make the monthly payments due under the Note and Loan Agreement when they became due. (*Id.*)

45. Defendants also agreed that First American had performed all of its obligations under the Loan Documents. (*Id.*)

46. In Paragraph 9 of the Forbearance Agreement, the parties also reaffirmed the Loan Documents. (*Id.*)

47. In Paragraph 2(b) of the Forbearance Agreement, First American agreed to forbear exercising its rights under the Loan Documents until May 15, 2019 (the "Forbearance Period"). (*Id.*) And, in Paragraph 10 of the Forbearance Agreement, Defendants represented that they "have no defenses, setoffs, claims or counterclaims of any kind or nature whatsoever against [First American] in connection with the Loan Documents or th[e Forbearance Agreement]." (*Id.*)

**Notice of Default**

48. On May 15, 2019, First American sent a Notice of Default to the Defendants through their respective counsel notifying Defendants that Defendant Roni Hicks was in "default under the Forbearance Agreement and the Loan Documents, and the Forbearance Period" was immediately terminated.

49. Defendants failed to cure their breaches of the Loan Documents as described in the Forbearance Agreement, and are still in default of the same.

9

50. Additionally, Roni Hicks breached the Loan Documents, including the Forbearance Agreement by failing to make the monthly payments due under the Loan Documents on April 1, 2019, May 1, 2019, June 1, 2019, and July 1, 2019.

51. As discussed above, Roni Hicks also breached the Loan Documents by failing to maintain a debt service coverage ratio of no less than 1.00 to 1.00 for the fiscal year ending December 31, 2018. As of December 31, 2018, Roni Hicks had a debt service coverage ratio of 0.57 to 1.00.

52. In the Notice of Default, First American, pursuant to the Loan Documents, accelerated all amounts due under the Loan Documents.

53. As of May 15, 2019, $6,965,627.26, including interest and late charges, was due and owing under the Loan Documents. This amount is exclusive of the expenses and costs associated with First American's enforcement of the Loan Documents, including reasonable attorneys' fees.

54. First American demanded a response to the Notice of Default within 14 days of the Notice of Default or by May 29, 2019.

55. Although Defendants responded, they have not cured their defaults.

56. Roni Hicks has failed to pay the amounts due, owing, and outstanding under the Loan Documents.

57. Wheeler and Gaynor-McCue have also failed to pay the amounts due, owing, and outstanding under the Loan Documents up to the amounts they personally guaranteed under the Amended Guaranty.

## COUNT I
## BREACH OF THE LOAN DOCUMENTS
## (against Roni Hicks)

58. First American realleges and incorporates Paragraphs 1-57 above, as though fully set forth herein.

59. The Loan Documents are valid and enforceable agreements between the parties.

60. First American has performed all of its material Obligations under the Loan Documents.

61. Roni Hicks has materially breached the Loan Documents by failing to timely pay or cause payment thereunder to be made to First American when those payments became due and owing under the Loan Documents, and failing to maintain a debt service coverage ratio of not less than 1.00 to 1.00 as of December 31, 2018.

62. As of May 15, 2019, Roni Hicks owed First American $6,965,627.26, including accrued interest and late charges, pursuant to the Loan Documents.

63. First American has demanded payment from Roni Hicks of all amounts due, owing, and outstanding under the Loan Documents.

64. Roni Hicks has failed to pay the amounts due, owing, and outstanding under the Loan Documents.

WHEREFORE, First American prays for entry of judgment on Count I against Roni Hicks in the amount of $6,965,627.26, plus interest, late charges, and costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II
## BREACH OF THE GUARANTY AGREEMENTS
## (against Wheeler)

65. First American realleges and incorporates Paragraphs 1-64 above, as though fully set forth herein.

66. The Loan Documents, including the Guaranty Agreement and Amended Guaranty Agreement (together, the "Guaranty Agreements") are valid and enforceable agreements between the parties.

67. First American has performed all of its material Obligations under the Loan Documents, including the Guaranty Agreements.

68. Roni Hicks has materially breached the Loan Documents by failing to timely pay or cause payment thereunder to be made to First American when those payments became due under the Loan Documents, and failing to maintain a debt service coverage ratio of not less than 1.00 to 1.00 as of December 31, 2018.

69. In the Guaranty Agreements, Wheeler personally guaranteed Roni Hicks' Obligations under the Loan Documents up to $1,500,000.

70. Wheeler has materially breached the Guaranty Agreements by failing to timely pay or cause payment thereunder to be made to First American when those payments became due under the Guaranty Agreements.

71. As of May 15, 2019, Roni Hicks owed First American $6,965,627.26, including accrued interest and late charges, pursuant to the Loan Documents, which Wheeler personally guaranteed up to $1,500,000.

72. First American has demanded payment from Roni Hicks and Wheeler of all amounts due, owing, and outstanding under the Loan Documents, including the Guaranty Agreements.

73. Roni Hicks and Wheeler have failed to pay the amounts due, owing, and outstanding under the Loan Documents, which Wheeler personally guaranteed up to $1,500,000 under the Guaranty Agreements.

WHEREFORE, First American prays for entry of judgment on Count II against Wheeler in the amount of $1,500,000, plus interest, late charges, and costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
## BREACH OF THE GUARANTY AGREEMENTS
## (against Gaynor-McCue)

74. First American realleges and incorporates Paragraphs 1-73 above, as though fully set forth herein.

75. The Loan Documents, including the Guaranty Agreements are valid and enforceable agreements between the parties.

76. First American has performed all of its material Obligations under the Loan Documents, including the Guaranty Agreements.

77. Roni Hicks has materially breached the Loan Documents by failing to timely pay or cause payment thereunder to be made to First American when those payments became due and owing under the Loan Agreements, and failing to maintain a debt service coverage ratio of not less than 1.00 to 1.00 as of December 31, 2018.

78. In the Guaranty Agreements, Gaynor-McCue personally guaranteed Roni Hicks' Obligations under the Loan Documents up to $500,000.

79. Gaynor-McCue has materially breached the Guaranty Agreements by failing to timely pay or cause payment thereunder to be made to First American when those payments became due under the Guaranty Agreements.

80. As of May 15, 2019, Roni Hicks owed First American $6,965,627.26, including accrued interest and late charges, pursuant to the Loan Documents, which Gaynor-McCue personally guaranteed up to $500,000 under the Guaranty Agreements.

81. First American has demanded payment from Roni Hicks and Gaynor-McCue of all amounts due, owing, and outstanding under the Loan Documents, including the Guaranty Agreements.

82. Roni Hicks and Gaynor-McCue have failed to pay the amounts due, owing, and outstanding under the Loan Documents, which Gaynor-McCue personally guaranteed up to $500,000 in the Guaranty Agreements.

WHEREFORE, First American prays for entry of judgment on Count III against Gaynor-McCue in the amount of $500,000, plus interest, late charges, and costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV
## FORECLOSURE ON SECURITY INTEREST AND APPOINTMENT OF RECEIVER
## (against Roni Hicks)

83. First American realleges and incorporates Paragraphs 1-82 above, as though fully set forth herein.

84. The Loan Documents are valid and enforceable agreements between the parties.

85. In the Loan Documents, in particular Section 10.2(C) of the Loan Agreement, Roni Hicks agreed that upon the occurrence of an event of Default, First American may "exercise all rights and remedies of a secured party under the Uniform Commercial Code and otherwise

14

permitted by applicable law, including, without limitation, the right to foreclose the security interest granted herein by any available judicial or other procedure and/or to take possession of any or all of the Collateral and the books and records relating thereto with or without judicial process . . . ." (Ex. C, Loan Agreement.)

86. First American has performed all of its material Obligations under the Loan Documents, including the Loan Agreement.

87. Roni Hicks has materially breached the Loan Documents by failing to timely pay or cause payment thereunder to be made to First American when those payments became due under the Loan Documents, and failing to maintain a debt service coverage ratio of not less than 1.00 to 1.00 as of December 31, 2018.

88. As of May 15, 2019, Roni Hicks owed First American $6,965,627.26, including accrued interest and late charges, pursuant to the Loan Documents.

89. First American has demanded payment from Roni Hicks of all amounts due, owing, and outstanding under the Loan Documents.

90. Roni Hicks has failed to pay the amounts due, owing, and outstanding under the Loan Documents. As a result, First American has the right to exercise all rights and remedies of a secured party under the Uniform Commercial Code.

91. First American has contemporaneously moved for the appointment of a receiver.

WHEREFORE, First American prays for entry of judgment on Count IV against Roni Hicks permitting First American to exercise all rights and remedies of a secured party under the Uniform Commercial Code, including, but not limited to (1) appointment of a receiver; (2) a full accounting of all accounts of Roni Hicks; and (3) authority to sell all collateral at a public or private auction.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order as follows:

A. Finding that Defendants have breached their Obligations under the Loan Documents;

B. Awarding compensatory damages against Defendant Roni Hicks on Count I in the amount of $6,965,627.26, plus interest and late charges;

C. Awarding compensatory damages against Defendant Wheeler on Count II in the amount of $1,500,000, plus interest and late charges;

D. Awarding compensatory damages against Defendant Gaynor-McCue on Count III in the amount of $500,000, plus interest and late charges;

E. Granting Plaintiff First American the authority to exercise all rights and remedies of a secured party under the Uniform Commercial Code, including, but not limited to (1) appointment of a receiver; (2) a full accounting of all accounts of Roni Hicks; and (3) authority to sell all secured collateral at a public or private auction;

F. Awarding Plaintiff First American its costs and expenses, including reasonable attorneys' fees; and

G. Granting Plaintiff First American such other and further relief as the Court may deem just and proper.

Date: July 8, 2019                                First American Bank


                                                  By:  */s/ Ronald R. Peterson*
                                                       One of its attorneys


                                                  Ronald R. Peterson (#2188473)
                                                  Melissa M. Root (#6288246)
                                                  Precious S. Jacobs (#6300096)
                                                  JENNER & BLOCK LLP
                                                  353 North Clark Street
                                                  Chicago, Illinois 60654
                                                  Telephone: (312) 222-9350
                                                  Rpeterson@jenner.com
                                                  Mroot@jenner.com
                                                  Pjacobs@jenner.com

17